UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE BELTINCK, et al.,

        Plaintiffs,                           Hon. Jane M. Beckering

v.                                       Case No. 1:25-cv-1374

JENNY MCINERNEY, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Presently before me is Defendants McInerney and Brater's Motion to Dismiss (ECF No. 56), in which Defendant Benson has joined. (ECF No. 60.) The motion is fully briefed and ready for decision. (ECF Nos. 62 and 63.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED** and Plaintiffs' first amended complaint be **dismissed**.

### I.    Background

#### A.    Procedural History

Plaintiffs Stephanie Beltinck and Shelly Lake filed their pro se complaint pursuant to 42 U.S.C. § 1983 and an emergency motion for temporary restraining order and preliminary injunction on November 5, 2025, against Defendants Jenny McInerney, an attorney with the Michigan Bureau of Elections (Bureau), Jonathan Brater, the Bureau's Director, and Michigan Secretary of State Jocelyn Benson. Plaintiffs sought relief in connection with an administrative hearing on their Help America Vote Act (HAVA) complaints that had been set for November 18, 2025. Plaintiffs' sole count in their complaint alleged a procedural due process violation. (ECF

No. 1 at PageID.19.) The Court denied the motion for temporary restraining order on November 6, 2025 (ECF No. 6) and referred the case pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF No. 7.)

On November 17, 2025, I issued a Report and Recommendation (PI R&R) recommending that the Court deny the motion for preliminary injunction, which remains pending. (ECF No. 16.) The same day, Defendants McInerney and Brater filed a notice that the November 18, 2025 administrative hearing had been adjourned (ECF No. 15), and Plaintiffs filed their first amended verified complaint. (ECF No. 18.) The first amended complaint alleges claims pursuant to Section 1983 for: (1) violations of HAVA Sections 402 (state administrative complaint procedure), 301 (audit capacity requirement), and 303 (voter registration database accuracy and verification) (Counts I, III–V); (2) violation of 52 U.S.C. § 20701 (federal record retention) (Count II); (3) violation of Plaintiffs' Fourteenth Amendment rights to procedural due process and equal protection (Counts VI and VII); (4) violation of Section 8 of the National Voter Registration Act (NVRA) (voter registration record retention) (Count VIII); and (5) "structural bias" in administrative complaint adjudication (Count IX).

### B.    Factual Background

Because the PI R&R fully sets forth the background of this dispute, I incorporate it here.

### A.    HAVA Background

Congress enacted HAVA, 52 U.S.C. § 20901, *et seq.*, in the wake of voting controversies that occurred in connection with the November 2000 presidential election. *See Bay Cnty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 412 (E.D. Mich. 2004). The Act is aimed at promoting voting and election administration systems that will "be the most convenient, accessible and easy to use for voters" and "will be nondiscriminatory and afford each registered and eligible voter an equal opportunity to vote and have that vote counted." 52 U.S.C. § 20981(a)(1) and (3). Among other things, HAVA establishes an Election Assistance Commission that assists States with the administration of Federal elections, conducts studies and issues reports, and assists with the administration of certain Federal election laws and programs. *Id.*, §§ 20921, 20981. HAVA also requires States to create reliable registration rolls by implementing a uniform, regularly updated computerized

2

statewide voter registration list. *Id.* § 21083. In addition, HAVA authorizes funding to States to help them meet the requirements of the Act. *Id.* § 21001.

Congress provided two express avenues to enforce HAVA's provisions. First, the Attorney General may bring actions for injunctive and declaratory relief "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" under various HAVA provisions. 52 U.S.C. § 21111. Second, "any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint" under "State-based administrative complaint procedures." *Id.* § 21112(a)(1), (a)(2)(B). A State that receives funding under a HAVA program is obligated to "establish and maintain" such "administrative complaint procedures." *Id.* § 21112(a)(1). HAVA specifies the following requirements and procedures:

> (A) The procedures shall be uniform and nondiscriminatory.
>
> (B) Under the procedures, any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.
>
> (C) Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.
>
> (D) The State may consolidate complaints filed under subparagraph (B).
>
> (E) At the request of the complainant, there shall be a hearing on the record.
>
> (F) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the appropriate remedy.
>
> (G) If, under the procedures, the State determines that there is no violation, the State shall dismiss the complaint and publish the results of the procedures.
>
> (H) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination.
>
> (I) If the State fails to meet the deadline applicable under subparagraph (H), the complaint shall be resolved within 60 days under alternative dispute resolution procedures established for purposes of this section. The record and other materials from any proceedings conducted under the complaint procedures established under this section shall be made available for use under the alternative dispute resolution procedures.

3

*Id.* § 21112(a)(2).

### B.     The Bureau's Complaint Process

In accordance with Section 21112(a)(2), Michigan has adopted the required administrative complaint procedures. (ECF No. 9-2.) The procedures provide that a person who believes an election authority has violated Title III of HAVA may file a complaint with the Bureau, which the Bureau will forward to the election authority within five days for a response. The Bureau may consolidate two or more complaints "if they contain substantially similar allegations against an election authority" or are "filed by the same person." (*Id.* at PageID.280.)

A complaint must: (1) identify the election authority that has violated HAVA Title III; (2) cite the Title III provision allegedly violated; (3) explain how the named election authority violated the provision; and (4) state that the complainant "either witnessed or possesses first-hand knowledge of the conduct alleged in [the complaint]." (*Id.* at PageID.281.) In addition, a complaint may request that the Bureau conduct a hearing on the record and include "[n]otarized affidavits from a maximum of three (3) persons who witnessed the alleged violations." (*Id.*) The election authority's response to the complaint, if any, must be made within 25 days after receipt of the complaint and, like the complaint, may include up to three notarized affidavits of "persons who have information that may assist the Bureau in determining whether the election authority violated Title III." (*Id.* at PageID.282.)

At a hearing, the complainant may call as witnesses only those persons who provided affidavits with the complaint, and the election authority may call as witnesses only those persons who provided affidavits in the response. The Bureau shall designate one or more persons to direct the hearing. (*Id.* at PageID.283.) In resolving the complaint, the Bureau must weigh both written testimony and oral testimony presented at the hearing. If the Bureau finds no reason to believe that the election authority violated Title III, it shall dismiss the complaint. On the other hand, if the Bureau finds reason to believe that a violation has occurred, it must provide an appropriate remedy and publish the results of its final determination on its website. (*Id.* at PageID.282–83.)

### C.     Plaintiffs' HAVA Complaints

On September 10, 2025, Beltinck filed the first of her three complaints, which the Bureau designated HAVA 2025-01. This complaint alleged that the platform supporting the statutorily-required electronic return of military ballots violated HAVA's audit requirements because it has no paper trail or audit capacity. The Bureau notified the election authority of the complaint on September 15, 2025. (ECF No. 9-3 at PageID.289.)

On September 11, 2025, Lake filed a HAVA complaint, which the Bureau designated HAVA 2025-02. This complaint alleged that the deletion of information

4

from electronic pollbooks following an election eliminates the ability to audit results. The Bureau notified the election authority of the complaint on September 16, 2025. (*Id.*) The same day, Beltinck filed her second complaint, which the Bureau designated HAVA 2025-03. This complaint alleged that the information contained in Michigan's voter registration list is not auditable because it lacks time stamps and assigns multiple user ID numbers to a single voter. The Bureau notified the election authority of this complaint on September 15, 2025. (*Id.*at PageID.289–90.)

On September 17, 2025, the Department of State issued a notice of isolation wall to all department staff listing the three complaints that had been received at that time. The notice indicated that Defendants Brater and McInerny would serve on the "Bureau Adjudication Team," while Defendant Benson and the Department's Legal Services Administration staff would serve on the "Secretary of State Team." All Department staff were notified that the two teams were "isolated from any discussions concerning this matter outside their respective teams." (*Id.* at PageID.291.)

Beltinck filed her last complaint, alleging that the deletion of information from electronic pollbooks removes manual audit ability, on October 8, 2025. The Bureau designated this complaint HAVA 2025-05 and provided notice to the election authority on October 10, 2025. (*Id.* at PageID.290.) Also on October 10, 2025, the Bureau notified Plaintiffs that their HAVA complaints had been consolidated pursuant to the HAVA complaint process. (ECF No. 1 at PageID.9; ECF No. 9-3 at PageID.291.)

With each complaint, Plaintiffs submitted a USB drive containing documents. After the drives were scanned for security threats, the Bureau transmitted them to the election authority for consideration. Upon review of the documents for HAVA 2025-05, the Bureau discovered that only one item included on the USB drive was listed on the exhibit list for the complaint and another item was only partially included on the exhibit list. The USB drive included four additional documents that were not included on the exhibit list. (*Id.* at PageID.293.) On October 23, 2025, the Bureau sent Beltinck an email notifying her of the situation and asking for clarification. (ECF No. 1-5; ECF No. 9-3 at PageID.293.) Beltinck responded the same day, stating that she would be including the additional documents in HAVA 2025-05 in addition to the exhibits already received. The Bureau responded on October 29, 2025, notifying Beltinck that the HAVA complaint process does not permit a complainant to supplement an existing complaint with new materials. (ECF No. 1-6; ECF No. 9-3 at PageID.293.)

Lake's complaint and at least one of Beltinck's complaints named both Defendants Brater and Benson as respondents. By letters dated September 16, 2022, and October 10, 2025, Defendant Brater notified Plaintiffs that because Defendant Benson, as the "chief election officer of the state" pursuant to Mich. Comp. Laws § 168.21, is the "election authority" subject to the administrative complaint process, the complaints were dismissed insofar as they named Brater as a respondent, but

would proceed with Defendant Benson as the respondent. (ECF No. 1-1; ECF No. 1-13; ECF No. 1-13.) In addition, in at least two of her complaints, Beltinck alleged violations of the National Voter Registration Act, the Voting Rights Act, the Civil Rights Act, and the U.S. Constitution. (ECF No. 1-1 at PageID.28–29; ECF No. 1-2 at PageID.31–32.) By letters dated October 1, 2025, and October 10, 2025, Defendant Brater notified Beltinck that these portions of the complaints were dismissed as they fall outside of Michigan's HAVA complaint process, but that the matters would proceed as to the alleged HAVA violations. (ECF No. 1-1 at PageID.28–29; ECF No. 1-2 at PageID.31–32.)

Defendant Benson filed her response to the first three complaints on October 10, 2025. (ECF No. 1-14.) The response, titled "motion to dismiss," included a portion arguing that Plaintiffs' HAVA complaints should be dismissed because they fail specifically to allege how the Department's actions violated the cited HAVA provisions. In support of this argument, the response offers the pleading standards set forth in the United States Supreme Court case of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and the Michigan Court of Appeals case of *Cape v. Howell Board of Education*, 145 Mich. App. 459 (1985), to assess the viability of the complaints. (ECF No. 1-14 at PageID.68–69.) Defendant Benson filed her response to HAVA 2025-05 on November 4, 2025. (ECF No. 9-3 at PageID.294–95.)

On October 17, 2025, Defendant McInerney notified Plaintiffs by email that the Bureau had scheduled a hearing for each of the complaints via Microsoft Teams for November 18, 2025, at 10:00 a.m. The email indicated that Beltinck and Lake would each be allowed 30 minutes of argument for their complaints, and Defendant Benson would be allowed 30 minutes of argument to respond. (ECF No. 1-4 at PageID.36.) Because the HAVA Complaint process does not specify time limits for hearings, the Bureau adopted the Michigan Court of Appeals limit for argument of calendar cases of 30 minutes per side. (ECF No. 9-3 at PageID.292–93.)

(ECF No. 16 at PageID.314–20 (footnote omitted).)

## II.  Motion Standards

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim.

Where jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A motion to dismiss under Rule 12(b)(1) for lack of jurisdiction may come in the form of either a "facial

6

attack" or a "factual attack." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). A facial

attack "questions merely the sufficiency of the pleading." *Id.* at 376.

> "[W]hen reviewing a facial attack, a district court takes the allegations in the complaint as true. . . . If those allegations establish federal claims, jurisdiction exists." However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

*Id.* (internal citations omitted). "A factual attack, on the other hand, is not a challenge to the

sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter

jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Here, Defendants'

challenge to standing presents a facial attack. In a facial attack, the court accepts as true all the

allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *Ohio Nat'l Life*

*Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure

to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to

raise a right to relief above the speculative level on the assumption that all of the complaint's

allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations

and footnote omitted). As the Supreme Court has held, to satisfy this rule, a complaint must contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility

standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility

of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a

7

notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

When evaluating a complaint under Rule 12(b)(6), a court may consider the complaint and any exhibits attached thereto, public records, and items appearing in the record of the case. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also, Continental Identification Prods., Inc. v. EnterMarket, Corp.*, No. 1:07-CV-402, 2008 WL 51610 at *1, n.1 (W.D. Mich. Jan. 2, 2008) (stating that "an exhibit to a pleading is considered a part of the pleading," and "the Court may properly consider the exhibits . . . in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"). "Court filings and docket entries are considered matters of public record which may be consulted in deciding a Rule 12(b)(6) motion." *Grise v. Stewart Cnty. Sch. Sys.*, No. 3:21-CV-00058, 2021 WL 4864490, at *8 (M.D. Tenn. Oct. 19, 2021) (quoting *In re Gainey Corp.*, Nos.11-8038, 08-09092, 10-80483, 2012 WL 3938521, at *13 (B.A.P. 6th Cir. Sept. 11, 2012)).

### III.   Discussion

Defendants move for dismissal of Plaintiffs' first amended complaint on a number of grounds. I conclude that motion should be granted upon the ground that Plaintiffs lack Article III standing to assert their claims.[1]

---

[1] Plaintiffs devote a substantial portion of their response to arguing that Defendants improperly relied on the Brater affidavit to support their motion and that the motion relies on disputed facts. (ECF No. 62 at PageID.666–72.) Neither assertion is persuasive. While Plaintiffs are correct that

### A.    Counts II, VIII, and IX

Defendants raised specific reasons for dismissal of the claims in Counts II and VIII, to which Plaintiffs did not respond. It is well established that in these circumstances, a court may treat the undefended claims for relief as abandoned. *Washington v. Roosen, Varchetti & Oliver, PPLC*, 894 F. Supp. 2d 1015, 1027 (W.D. Mich. 2012) ("Failing to respond to arguments properly raised in a motion to dismiss constitutes abandonment of that position."); *Bazinski v. JPMorgan Chase Bank, N.A.*, No. 13-14337, 2014 WL 1405253, at *2 (E.D. Mich. 2014) ("Claims left to stand undefended against a motion to dismiss are deemed abandoned"). Therefore, the Court should dismiss these claims as abandoned.

As for Count IX, Defendants argued that the claim for "structural bias" is not a recognized, distinct cause of action. (ECF No. 57 at PageID.624.) Plaintiffs do not dispute this point but argue that "it is a Section 1983 claim for violation of the Fourteenth Amendment's Due Process Clause based on structural bias in adjudication." (ECF No. 62 at PageID.684.) Because Plaintiffs concede that Count IX is not a distinct cause of action, Count IX should be dismissed and considered as part of Plaintiffs' separate due process claim.

### B.    Standing

Article III of the Constitution limits the "judicial Power" of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Standing is one component of Article III jurisdiction. It is a threshold inquiry because the elements of standing are "an indispensable part

---

a court is generally limited to reviewing the sufficiency of the allegations in the complaint in deciding a motion to dismiss, Defendants' legal arguments do not rely or depend on the factual assertions in the Brater affidavit. The affidavit simply provides context for the dispute and does not figure into the standing analysis herein. Regardless, as noted above, a court may consider matters of public record, including court filings and docket entries. Finally, none of Defendants' arguments require the Court to resolve disputed issues of material fact.

of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). If a plaintiff lacks Article III standing, the court has no subject matter jurisdiction to hear the claim. *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015); *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005) (citing *Lujan*, 504 U.S. at 560). This Court has no authority to render advisory opinions, issue opinions on abstract principles, or hear generalized grievances. *See Allen v. Wright*, 468 U.S. 737, 751 (1984); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Thus, a plaintiff seeking relief must show that she has standing to assert a claim.

To prove standing, a plaintiff must show that she suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). An injury in fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "[T]he standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into a vehicle for the vindication of the value interests of concerned bystanders." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (internal quotation marks and citations omitted).

The present inquiry concerns the existence of an injury, which must satisfy two distinct components: particularization and concreteness. *Spokeo*, 578 U.S. at 339. To be "particularized," the asserted injury "must affect the plaintiff in a personal and individual way." *Id.* An injury that is undifferentiated and common to all members of the public amounts to a "generalized grievance"

10

that fails the particularization requirement. *United States v. Richardson*, 418 U.S. 166, 173–75 (1974). "[N]o matter how sincere," a generalized grievance cannot support standing. *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013).

To meet Article III's "concrete injury" requirement, the "injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340. Both tangible and intangible harms can satisfy this requirement. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). "[T]raditional tangible harms, such as physical harms and monetary harms," "readily qualify as concrete injuries under Article III." *Id.* Intangible harm requires more analysis. In *Spokeo*, the Court addressed whether the plaintiff had suffered an injury in fact to support his claims under the Fair Credit Reporting Act (FCRA) based on the defendant's noncompliance with FCRA requirements, for which Congress had authorized a cause of action for actual or statutory damages. *Id.* at 335–36. To identify intangible harm for Article III purposes, the Court found it useful to consider whether the asserted harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 578 U.S. at 340–41. Examples include "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. Some constitutional harms, such as free speech or free exercise violations, may also qualify. *Id.* (citing *Spokeo*, 578 U.S. at 340 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009), and *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993))). Apart from history, the Court found "the judgment of Congress" informative. *Spokeo*, 578 U.S. at 340–41. It cautioned, however:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for

example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at 341; *see also Department of Educ. v. Brown*, 600 U.S. 551, 562 (2023) (stating that "we have never held a litigant who asserts [violation of a procedural] right is excused from demonstrating that it has a 'concrete interest that is affected by the deprivation' of the claimed right") (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496–97 (2009)).

For purposes of standing, Plaintiffs allege two sources of injury: (1) substantive injuries from deletion of electronic pollbook (EPB) records; and (2) procedural injuries from a defective HAVA administrative process. (ECF No. 18 at PageID.345, 347.) The alleged substantive injuries pertain to Counts III and IV asserting violations of HAVA Sections 301 and 303, 52 U.S.C. §§ 21081(a)(2) and 21083(a), while the procedural violations pertain to Counts I and V asserting violations of HAVA Section 402, 52 U.S.C. § 21112(a)(2).

### 1.    Plaintiffs' substantive injuries are "generalized grievances"

Regarding their claimed substantive injuries, Plaintiffs allege that Defendants' directive requiring deletion of EPB information within seven days of an election results in a concrete injury to them because it prevents them from verifying that: (a) the number of ballots cast at their respective precincts matches the number of voters who checked in via EPB; (b) their check-ins were properly recorded and timestamped; (c) only one ballot was issued in each of their names; (d) the EPB reconciled with the number of cast ballots; (e) any discrepancy between EPB check-ins and cast ballots was identified or investigated; and (f) the audit trail required by HAVA Section 301 exists for the election in which they participated. (*Id.* at PageID.346.) Plaintiffs contend these are not generalized injuries because deletion of EPD information from the records of their respective precincts precludes them from confirming their participation in the election at their precincts. (*Id.*)

12

Plaintiff's argument lacks merit because the harm they allege is widely shared by all Michigan voters. In other words, Plaintiffs' complaints about HAVA violations amount to the sort of "generalized grievance" that is "plainly undifferentiated and common to all members of the public." *Lance v. Coffman*, 549 U.S. 437, 440–41 (2007) (internal quotation marks omitted) (quoting *Richardson*, 418 U.S. at 176–77); *see also Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 220 (1974) (holding that the plaintiffs lacked standing to bring a challenge under the Constitution's Incompatibility Clause to Congressmembers' military service while holding office because "standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share"). The asserted harm is not individualized because all voters in Plaintiffs' precincts suffer the same injury. In turn, voters in every other precinct throughout Michigan can assert the same injury. This broad-based injury arises from the Bureau's alleged failure to comply with HAVA's recordkeeping and other requirements—a concern to all citizens. But "[t]o have standing, . . . a plaintiff must have more than 'a general interest common to all members of the public.'" *Lance*, 549 U.S. at 440 (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)). A claim that "the law has not been followed," which is what Plaintiffs allege here, "is precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court] ha[s] refused to countenance in the past." *Id.* at 442. In fact, Plaintiffs' allegations of HAVA violations here are indistinguishable from numerous other cases in which courts have dismissed election law challenges because they failed to allege particularized injuries in fact.[2] *See, e.g., Hotze v. Hudspeth*, 16 F.4th 1121, 1124 (5th Cir. 2021) (plaintiffs who alleged

---

[2] In their response, Plaintiffs argue that "Lake's injuries are particularly concrete because she is a Deputy Election Clerk for Barry County, Michigan . . . [, and] [t]he deletion of EPB records affects not only her rights as a voter but also her ability to perform her duties as an election official[.]"

that drive-thru voting "hurt the 'integrity' of the election process" lacked standing because their claim was "far too generalized to warrant standing"); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (holding that the plaintiff's "interest in ensuring that only lawful ballots are counted" was simply a "generalized grievance" because his "interest in compliance with state election laws [was no] different from that of any other person" (first quotation cleaned up)); *Crist v. Commission on Presidential Debates*, 262 F.3d 193, 195 (2d Cir. 2001) (stating that "a voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared"); *King v. Whitmer*, 505 F. Supp. 3d 720, 739 n.11 (E.D. Mich. 2020) (voters failed to allege redressable, particularized injury in connection with an equal protection claim); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926–27 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter.").

Plaintiffs distinguish their circumstances from those of the plaintiffs in the foregoing cases, including *Lance* and *Hotze*, because Plaintiffs claim they are "not generic voters raising abstract concerns about election integrity . . . [but] are identified complainants in pending HAVA administrative proceedings . . . who have personally experienced specific procedural deprivations in those proceedings." (ECF No. 62 at PageID.672.) This argument is meritless, as Plaintiffs cite no case for the proposition that a plaintiff may create standing by marrying a procedural violation with a generalized grievance. Indeed, *Spokeo* and *TransUnion* preclude such a result because an

---

(ECF No. 62 at PageID.676.) Apart from the fact that this allegation does not appear in the first amended complaint, changing hats does not transform Lake's generalized grievance into a particularized injury, as her purported injury as a deputy clerk is the same injury shared by every other clerk and deputy clerk throughout Michigan. Moreover, an inability to do one's job as fully as one would like is not the sort of intangible injury that can support Article III standing because it lacks "a close historical or common-law analogue." *TransUnion*, 594 U.S. at 424.

14

injury must be both concrete and particularized.[3] In short, Plaintiffs' alleged substantive harm consists of nothing more than injury that is undifferentiated and common to all members of the public.

### 2. HAVA procedural violations are not an "intangible injury"

Plaintiffs also suggest that denial of procedural rights in connection with their HAVA administrative complaints amounts to a "concrete injury" for purposes of Article III. Not so. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496. As set forth above, to establish an injury that is concrete, Plaintiffs must allege that they suffered a tangible or intangible injury. Plaintiffs allege no financial loss or bodily injury, so they must allege intangible injury that passes muster under *Spokeo* and *TransUnion*. They fail to do so.

Recently, the Seventh Circuit considered a similar challenge alleging violation of HAVA's administrative procedure provisions set forth in 52 U.S.C. § 21112(a) and held that the plaintiffs' lack of a concrete injury precluded standing. *Wisconsin Voter Alliance v. Millis*, 166 F.4th 627 (7th Cir. 2026). The plaintiffs in *Millis* had filed HAVA administrative complaints with the Wisconsin Elections Commission, but the commissioners declined to respond due to an "ethical recusal." *Id.* at 631. In lieu of a response, the commissioners offered the plaintiffs three state-law alternatives. Instead, the plaintiffs filed suit in federal court pursuant to Section 1983. Because the

---

[3] Citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), Plaintiffs claim that they have standing because they have a "property interest in the adjudicatory process itself." (ECF No. 62 at PageID.673.) But *Logan* dealt with a substantive issue—whether the plaintiff had a property interest (he had a cause of action under the Illinois state statute) and whether application of the state procedure deprived him of that interest. Standing was not at issue. In fact, the plaintiff clearly suffered tangible harm giving rise to a "concrete injury"; he was discharged from his job and suffered a pecuniary loss.

plaintiffs had not suffered tangible injury, they had to assert intangible harm to establish standing. The court summarized its analysis as follows: "If an asserted injury has no common-law analog, raises no constitutional concerns, and cannot be enforced through an express right of action, a plaintiff does not have standing." *Id.* at 633. First, the court found that the plaintiffs failed to show that violations of HAVA's procedural provisions constituted "injuries per se." *Id.* It noted the lack of "any historic form of action, in tort or otherwise, permitting citizens to sue the government for failing to follow statutory procedures without some additional concrete injury." *Id.* It further observed that, unlike the private injuries identified in *Spokeo* and *TransUnion*, the plaintiffs asserted "public-oriented grievances about government policies." *Id.* Turning to the second *Spokeo* consideration, the court found Congress' judgment irrelevant because it had not "created a private right of action for individuals to enforce HAVA in federal court." *Id.* at 634. Further, the court pointed to several other indicia supporting the conclusion that HAVA procedural violations do not amount to intangible injury: (1) the statutes at issue in almost every Supreme Court case addressing intangible injuries under federal law provided an express private right of action; (2) HAVA Section 402(a) does not contain the clear and unambiguous "rights-creating language" that *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025), demands of Spending Clause legislation to create enforceable rights; (3) HAVA provides a "comprehensive two-pronged remedial scheme directing individuals to air their grievances with state agencies, not federal courts"; and (4) *Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) (observing that the petitioners were unlikely to succeed on the merits of their implied rights claim under 52 U.S.C. § 21083(a)(1)(A)) indicates that the Supreme Court disfavored Section 1983 claims to enforce HAVA even before it restricted the implied rights doctrine in *Medina. Id.* at 634–35. Last, while the *Millis* court acknowledged *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004)—the cornerstone

of Plaintiffs' action—as one of a few pre-*Medina* cases finding private rights of action for *certain* HAVA provisions, it observed that no court has ever done so for Section 21112. *Id.* at 635.

*Millis* speaks directly to Plaintiffs' lack of standing in this case and I find its analysis persuasive. Accordingly, because Plaintiffs have not demonstrated an injury that is both concrete and particularized to support standing, the action should be dismissed in its entirety for lack of Article III standing.[4]

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendants' motion to dismiss (ECF No. 56) on the ground that Plaintiffs lack Article III standing.

Dated: March 16, 2026                              /s/ Sally J. Berens
                                                           SALLY J. BERENS
                                                           U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[4] I have considered Plaintiff Lake's submission of the March 5, 2026 order in *Kramer v. Hoskins*, No. 2:25-cv-4257 (W.D. Mo.), granting the plaintiff's motion for a preliminary injunction and directing the defendant to provide her a hearing on her HAVA complaint. (ECF No. 69-1.) The *Kramer* order is immaterial to the recommended basis for dismissal herein because it does not address Article III standing.